```
                UNITED STATES DISTRICT COURT            FILED
                NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION                OCT 31 PM 4:5
```

BUBBA THOMAS,                )
                             )
      Plaintiff,             )
                             )
v.                           )       Civil Action No. CV-S-1921-S
                             )
TARRANT CITY BOARD OF        )       ENTERED
EDUCATION,                   )
                             )       NOV - 1 2001
      Defendant.             )

## MEMORANDUM OPINION

Plaintiff, Bubba Thomas, alleges that he was subjected to unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.[1] He claims that his former employer, the Tarrant City Board of Education,[2] retaliated against him for asserting federally protected rights. The action is before the court on defendant's motion for summary judgment. Upon consideration of the pleadings, defendant's brief, and defendant's evidentiary submissions,[3] this court concludes that the motion is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Plaintiff, who appears *pro se*,[4] has not directly responded to defendant's motion for summary judgment. Instead, he asked this court to appoint him legal assistance.[5] The court notes that plaintiff

---

[1] Plaintiff's complaint also asserts a claim under 42 U.S.C. § 1988. That section does not provide a basis for plaintiff's retaliation claim, however. Rather, § 1988(b) grants the court discretion in awarding attorney's fees to the prevailing party in actions to enforce certain statutory provisions. Accordingly, plaintiff' claim under § 1988 appears to be a request for attorney's fees should plaintiff prevail on the merits of his retaliation claim.

[2] Plaintiff described defendant as the "Tarrant Board of Education" in his complaint. That misnomer (*see* doc. no. 4: defendant's answer) has been corrected here.

[3] Plaintiff has not responded to the motion for summary judgment.

[4] Plaintiff was originally represented in this matter by attorney Jack Hollingsworth. Following Mr. Hollingsworth's disbarrment, however, plaintiff failed to retain other counsel. *See* Letter from plaintiff filed September 25, 2001 (doc. no. 16).

[5] Letter from plaintiff filed September 25, 2001 (doc. no. 16).



was given notice of the dates by which he should submit any materials in opposition to the motion. (See the Submission order entered on September 18, 2001 (doc. no. 15), and the "Notice and Explanation" of Federal Rule of Civil Procedure attached thereto.) Therefore, it cannot be seriously contended that plaintiff was unaware of his burden under Rule 56. Specifically, that burden requires that, when a motion for summary judgment is made and supported as provided by the Federal Rules of Civil Procedure, plaintiff, as the adverse party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen v. United American Bank of Central Florida*, 83 F.3d 1347, 1349 (11th Cir. 1996) (affirming grant of summary judgment where non-moving party did not adduce evidence in support of claim, and, failed to "supplement the allegations of the complaint with affidavits, file a memorandum in opposition to the motion for summary judgment, or otherwise comply with Rule 56(e) on a timely basis").

When the non-moving party fails to respond to an argument made in a brief submitted in support of the moving party's motion for summary judgment, the non-moving party is deemed to have conceded the argument. *See Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."). *Cf., e.g., Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing

2

*Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999)).

## II. SUMMARY OF FACTS

Plaintiff began working for the Tarrant City Board of Education ("the Board") in July of 1998, as a twelve month custodian at the Tarrant City Middle School.[6] His duties included maintaining the buildings and grounds, and performing other small tasks requested of him. The Board also employed two other custodians at the Middle School, Olivia Todd and Larry Watson.[7] The principal of the Middle School, Wayne Smith, served as plaintiff's immediate supervisor.[8] Although Smith gave plaintiff most of his job assignments, teachers occasionally would ask him to do something.[9]

Plaintiff's wife, Lynda Thomas, began working for the Board in August of 1998, as a child nutritionist in the Tarrant City Elementary School cafeteria.[10] She resigned her position in January of 1999.[11] She filed a charge of discrimination against the Board with the Equal Employment Opportunity Commission on February 2, 1999, and subsequently filed a lawsuit.[12] After plaintiff's wife filed her EEOC charge, Smith began to treat him less favorably than the other custodians.

On two or three occasions, Smith telephoned plaintiff at home, when he was sick and did not report to work.[13] Although plaintiff acknowledged that it was appropriate for Smith to check on his whereabouts when he missed work, plaintiff objects to manner in which it was done, and, the fact

---

[6] Defendant's evidentiary submission (doc. no. 14), Exhibit 1 (plaintiff deposition), at 36.

[7] *Id.* at 38.

[8] *Id.* at 36-37.

[9] *Id.* at 37-38.

[10] *Id.* at 40-41; Complaint ¶ 11.

[11] Defendant's evidentiary submission (doc. no. 14), Exhibit 1 (plaintiff deposition), at 40-41.

[12] *Id.* at 45-46; Complaint ¶ 12, 18).

[13] Defendant's evidentiary submission (doc. no. 14), Exhibit 1 (plaintiff deposition), at 48-49; *id.*, Exhibit 1 (plaintiff deposition), exhibit 2 (November 5, 1999 EEOC charge filed by plaintiff) ¶ 5.

that Smith never called the other custodians at home when they did not report to work.[14]

Plaintiff's EEOC charge states that, although his co-workers were told about several school functions, he was not informed of these events and, as a result, was unable to attend.[15] Plaintiff identified only two school events to which he was not invited. He testified, however, that he attended both of these events and was not asked to leave.[16]

On one occasion, plaintiff received a poem entitled "The Ant and the Grasshopper," an adaptation of a classic Aesop's Fable intended as a political satire of the Democratic Party's position on welfare.[17] Andrea Thompson, a teacher at the Middle School, gave plaintiff a copy of the poem and told him that she was highly offended by it.[18] Plaintiff also found the poem offensive, because he believes it "characterize[s] black folks as green bugs, and it says blacks are lazy and whites should work."[19] Plaintiff did not complain to anyone about the poem until he met with Superintendent Perkins on August 31, 1999, three months after he had resigned his employment.[20]

From the time plaintiff began his employment at the Tarrant City Middle School, he worked on Saturdays to catch up on work that could not be done while students were attending classes.[21] Principal Smith knew that plaintiff was working on weekends, and initially told him it was acceptable.[22] After plaintiff's wife filed her EEOC charge, however, Smith told plaintiff that it

---

[14] *Id.*, Exhibit 1 (plaintiff deposition), at 52-55.

[15] *Id.*, Exhibit 1 (plaintiff deposition), exhibit 2 (November 5, 1999 EEOC charge filed by plaintiff) ¶ 6.

[16] *Id.*, Exhibit 1 (plaintiff deposition) at 88-94.

[17] *Id.*, Exhibit 1 (plaintiff deposition), exhibit 3 (Poem entitled "The Ant and the Grasshopper"); *id.*, Exhibit 1 (plaintiff deposition), exhibit 2 (November 5, 1999 EEOC charge filed by plaintiff) ¶ 10.

[18] *Id.*, Exhibit 1 (plaintiff deposition) at 100.

[19] *Id.* at 100-01.

[20] *Id.* at 102-03, 106-15.

[21] *Id.*, Exhibit 1 (plaintiff deposition), exhibit 2 (November 5, 1999 EEOC charge filed by plaintiff) ¶ 7.

[22] *Id.*, Exhibit 1 (plaintiff deposition) at 76.

would not be "a good idea" to continue working on weekends.[23] Smith gave no reason.[24] Smith did not tell any white employees to cease weekend work.[25]

Each of the custodians at the Tarrant City Middle School had broom closets in which they were allowed to store personal items and spend free time.[26] After plaintiff's wife filed her EEOC charge, however, Smith told plaintiff that he could no longer use his broom closet.[27] Smith did not tell the other custodians that they could no longer use their broom closets.[28]

On one occasion, plaintiff went to Pat Rhodes, the lunchroom manager at the Middle School, and asked whether he could receive free food for helping out in the lunchroom, like the custodian that plaintiff had replaced.[29] She replied that everyone had to pay for their food.[30] Plaintiff testified, however, that cafeteria workers were allowed free meals as part of the Board's policy.[31] In addition, plaintiff witnessed Larry Watson, one of the other custodians, eat for free on a number of occasions.[32]

Plaintiff received his only performance evaluation on May 12, 1999, which indicated problem areas on which he needed to focus in the future.[33] Although plaintiff was rated "satisfactory" overall, the evaluation identified "attendance" and "conflicts with staff employees"

---

[23] *Id.*, Exhibit 1 (plaintiff deposition) at 74; *id.*, Exhibit 1 (plaintiff deposition), exhibit 2 (November 5, 1999 EEOC charge filed by plaintiff) ¶ 7.
[24] *Id.*, Exhibit 1 (plaintiff deposition) at 75.
[25] *Id.* at 78-79.
[26] *Id.* at 62.
[27] *Id.* at 62-64.
[28] *Id.* at 59-60.
[29] *Id.* at 119.
[30] *Id.*
[31] *Id.* at 118.
[32] *Id.* at 118-19.
[33] *Id.*, Exhibit 2 (Smith declaration), exhibit A (Plaintiff's performance evaluation dated May 12, 1999).

as areas in which he needed improvement.[34]

On one occasion, plaintiff discussed his wife's EEOC charge with Principal Smith. Plaintiff told Smith that he felt that he was being treated differently because of his wife's EEOC charge. Smith told plaintiff that his treatment had nothing to do with his wife's charge.[35]

Plaintiff resigned his position as custodian on May 24, 1999. He submitted two letters of resignation — one to Principal Smith and the other to Superintendent Perkins.[36] In the letter to Superintendent Perkins, plaintiff stated that he was resigning his employment because of the racial discrimination, mental stress, and hostile work environment brought on and encouraged by Principal Smith.[37] Superintendent Perkins attempted to arrange a meeting with plaintiff on June 9, 1999, to discuss his stated reasons for resigning.[38] Plaintiff canceled this meeting, however.[39] Plaintiff eventually met with Superintendent Perkins on August 31, 1999, and discussed his reasons for resignation.[40]

Plaintiff filed an EEOC charge against the Board on November 5, 1999, alleging that he was constructively discharged in retaliation for his wife's EEOC charge of discrimination.[41] On July 11, 2000, plaintiff initiated the present action.[42]

---

[34] *Id.*

[35] *Id.*, Exhibit 1 (plaintiff deposition) at 104-05.

[36] *Id.*, Exhibit 1 (plaintiff deposition) at 46-47; *id.*, Exhibit 1 (plaintiff deposition), exhibit 1 (May 24, 1999 letter from plaintiff to Dr. Fred Perkins).

[37] *Id.*, Exhibit 1 (plaintiff deposition), exhibit 1 (May 24, 1999 letter from plaintiff to Dr. Fred Perkins).

[38] *Id.*, Exhibit 1 (plaintiff deposition), exhibit 4 (May 26, 1999 memorandum from Superintendent Perkins to plaintiff).

[39] *Id.*, Exhibit 1 (plaintiff deposition), exhibit 5 (August 12, 1999 memorandum from Superintendent Perkins to plaintiff).

[40] *Id.*, Exhibit 1 (plaintiff deposition), exhibit 6 (Notes from August 31, 1999 meeting between plaintiff and Superintendent Perkins).

[41] *Id.*, Exhibit 1 (plaintiff deposition), exhibit 2 (November 5, 1999 EEOC charge filed by plaintiff), at ¶ 3.

[42] Complaint (doc. no. 1), at ¶ 1.

### III. DISCUSSION

A plaintiff must prove three elements to establish a prima facie case of retaliation under Title VII: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal linkage between the protected activity and the adverse employment action. *See, e.g., Bass v. Board of County Commissioners*, 256 F.3d 1095, 1117 (11th Cir. 2001); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

Although 42 U.S.C. § 1981 does not contain a prohibition against retaliation, the Eleventh Circuit recently held that retaliation claims are cognizable under § 1981. *See Andrews v. Lakeshore Rehabilitation Hospital*, 140 F.3d 1405, 1409-13 (11th Cir. 1998). The protection of § 1981, however, is limited to cases of discrimination and retaliation on the basis of race. *Little v. United Technologies*, 103 F.3d 956, 961 (11th Cir. 1997). Still, both Title VII and § 1981 require a plaintiff to demonstrate that he engaged in statutorily protected activity to establish a prima facie case of retaliation. *See Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1058-61 (11th Cir. 1999) (treating the sufficiency of the evidence to sustain a retaliation claim brought under Title VII and § 1981 with a single analysis); *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1181 (M.D. Ala. 2000); *Holiness v. Moore-Handley, Inc.*, 114 F. Supp. 1176, 1185 (N.D. Ala. 1999). Accordingly, the court will consider plaintiff's Title VII and § 1981 claims together.

With regard to statutorily protected activity, section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter [of Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [of Title VII].

42 U.S.C. § 2000e-3(a). Congress thus recognized two bases for a claim of retaliation: one for *opposition* to discriminatory practices, and another for *participation* in protected activity. "Under the opposition clause, an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by this subchapter.' ... And, under the participation clause, an employer may not retaliate against an employee because the employee 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.' ..." *Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

The filing of a formal charge of discrimination with the EEOC clearly is protected under the participation clause. *See, e.g., Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998). In addition, the participation clause protects actions and statements that occur *after* the filing of an EEOC charge, and in conjunction with proceedings initiated by that charge:

> The participation clause covers participation in "an investigation under this subchapter," that is, an investigation under subchapter VI of Chapter 21 of Title 42 (42 U.S.C. §§ 2000e – 2000e-17). 42 U.S.C. § 20003-3(a). This clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; *it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC.* See Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir. 1978) (stating that participation means 'participation in the machinery set up by Title VII to enforce its provisions").

*Total System Services, Inc.*, 221 F.3d at 1174 (emphasis added) (footnotes omitted). In a marginal note to the foregoing holding, the court added:

8

> So, at a minimum, some employee must file a charge with the EEOC (or its designated representative) or otherwise instigate proceedings under the statute for the conduct to come under the participation clause. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (concluding that *any protected activity by an employee prior to the instigation of statutory proceedings must come under opposition clause* because instigation of statutory proceedings is prerequisite to protection under participation clause); *Burns v. Republic Sav. Bank*, 25 F. Supp. 2d 809, 828 (N.D. Ohio 1998) ("Participation requires the actual filing of a charge...."); *see also Johnson v. University of Cincinnati*, 215 F.3d 561, 581 (6th Cir. 2000) ("To establish a claim of retaliation under the participation clause, Plaintiff must make a prima facie case by showing that Defendants discharged him because he filed a claim with the EEOC."); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) ("In the instant case, the 'participation clause' is irrelevant because Byers's [*sic*] did not file a charge with the EEOC until after the alleged retaliatory discharge took place."). The parties cite no case holding an employee's taking part in an internal investigation to be protected activity under the participation clause when no EEOC charge had been filed.

*Id.* at 1174 n.2 (emphasis added).[43]

Beyond the proposition that the opposition clause covers actions and statements made prior to the filing of a formal EEOC charge, *see Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (*cited with approval in Total System Services*, 221 F.3d at 1174 n.2),

> [c]ourts disagree on the scope of protection afforded by the opposition clause. The three most controverted areas involve: (1) the meaning of the requirement that the practice opposed be "made an unlawful employment practice by [Title VII]"; (2) when broad or ambiguous complaints will be interpreted as "opposition"; and (3) when otherwise protected "opposition" loses its protection because of the form or manner in which the opposition is made.

---

[43] *But see* 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 651-52 (3d ed. 1996) (collecting cases defining the scope of the participation clause more broadly):

> It covers all aspects of the process of communicating (or refusing to communicate) allegations or evidence to a civil rights enforcement agency. The filing of a formal "charge," as defined in § 706 [42 U.S.C. § 2000e-5], plainly is protected, and protection also has been held to extend to an unsworn letter protesting the EEOC's dismissal of a charge, and the expression of an intent to file a charge. Courts have interpreted "assist[ing]" and "participat[ing]" to cover the private gathering of non-confidential information for the investigating agency's use in addressing the charge, being a probable witness for a plaintiff, testifying for a co-worker, assisting fellow workers in their discrimination claims, assisting relatives in their discrimination claims, and refusing to be a cooperative witness for an employer. Courts extend derivative protection to those who suffer adverse action because their employer mistakenly believes that they have filed a charge, or because they are related to, or allied with, someone who has engaged in protected participation or opposition. [Footnotes omitted.]

I Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 655 (3d ed. 1996) (footnote omitted).

The court finds that plaintiff has failed to establish a prima facie case of retaliation. As defendant points out, plaintiff has not alleged, nor has he presented any evidence, that *he* opposed any unlawful practice, or that *he* participated in an investigation of his wife's EEOC charge. Rather, he merely alleges that the Board retaliated against him because *his wife* filed an EEOC charge.[44]

Plaintiff seeks to extend the scope of Title VII and § 1981 by arguing that his wife's protected conduct should be imputed to him. Courts which have considered the issue, however, have found no statutory support for such a claim. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819 (8th Cir. 1998) ("We believe that the rule advocated by [plaintiff] — that a plaintiff bringing a retaliation claim need not have personally engaged in statutorily protected activity if his or her spouse or significant other, who works for the same employer, has done so — is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others, from retaliation."); *Thomas v. Ford Motor Co.*, 2000 WL 951733 at *10-11 (N.D. Ga. February 10, 2000) (holding that plaintiff did not engage in statutorily protected activity simply because her husband asserted his right to equal treatment against their employer). *But see EEOC v. Ohio Edison Co.*, 7 F.3d 541, 544 (6th Cir. 1993) (holding that plaintiff's allegation of reprisal for her husband's anti- discrimination activities state a claim upon which relief can be granted under Title VII); *Thurman v. Robertshaw Control Co.*, 869 F.Supp. 934, 941 (N.D. Ga. 1994).

This court finds the Eighth Circuit's opinion in *Smith* persuasive, and holds that plaintiff has failed to establish a prima facie case with regard to his claims for retaliation under Title VII and §

---

[44] Complaint (doc. no. 1) at ¶ 21; Defendant's evidentiary submission (doc. no. 14), Exhibit 1 (plaintiff deposition) at 42); *id.*, Exhibit 1 (plaintiff deposition), exhibit 2 (November 5, 1999 EEOC charge filed by plaintiff) at ¶ 3.

10

1981.

## IV. CONCLUSION

For the foregoing reasons, this court concludes that defendant's motion for summary judgment is due to be granted with respect to all of plaintiff's claims. An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

DONE this **31st** day of October, 2001

*[signature]*
United States District Judge